Miller *vs.* Kernaghan *et al.*

---

J. F. & L. J. MILLER, plaintiffs in error, *vs.* ROBERT H. KERNAGHAN *et al.*, defendants in error.

1. An assignment by a debtor for the equal benefit of all his creditors, violates no law or public policy of this state. Therefore, such an assignment lawfully made in South Carolina by a resident thereof, will pass personal assets found in Georgia.

2. Such assets having been attached here, (by garnishment,) at the instance of Georgia creditors, after the execution of the assignment and notice thereof given to the garnishee, a judgment applying to their claims a *pro rata* share of the assets, and no more, is quite as favorable to the attaching creditors as the law of the case will warrant.

3. Against such an assignment the courts of this state will not hold the assets here for administration till Georgia creditors are satisfied in full.

Debtor and creditor. Assignment. Garnishment. Comity. Before Judge GIBSON. Richmond Superior Court. April Term, 1875.

Reported in the opinion.

H. CLAY FOSTER; JOHN S. DAVIDSON, for plaintiffs in error.

FRANK H. MILLER, for defendants.

BLECKLEY, Judge.

A British insurance company having an agent in Augusta, Georgia, issued a policy, through the latter, upon a stock of goods in South Carolina, belonging to a resident of that State. The risk became a loss on the 18th of January, 1875. Two days thereafter the policy was assigned in South Carolina, by the assured, to trustees, also residents of that state, in trust, to disburse the amount which might be collected thereon, among his creditors, according to the amount of their claims, *pro rata*, and to pay the expenses of such disbursement. Notice of the assignment was given to the company's agent in Augusta on the next day after it was made. After the reception of this notice, but upon the same day it was received, the agent was served with a summons of garnishment, at the instance of the plaintiffs in error, attaching creditors of the assured, residing in the state of Georgia. The attachments were founded on debts by open account. Judgments against the defendant in attachment were rendered in due time, and thereafter, the fund admitted by the garnishee's answer, being in the power of the court for distribution, plaintiffs in attachment claiming a sufficiency of the same to satisfy their attachments, and the trustees claiming the whole by virtue of the assignment, the court ordered that the plaintiffs have leave to enter up judgment against the garnishee for their *pro rata* share of the fund only ; and that the balance be paid over to the trustees for disbursement under the terms of the assign-

Miller *vs.* Kernaghan *et al.*

ment. It appeared to the court that there were numerous creditors, and that the aggregate of their claims was largely in excess of the fund, which fund, so far as appeared, constituted all the assets of the debtor.

1. Our courts will not regard an assignment made in another state which, as to assets here, contravenes our own law or declared public policy: 12 *Georgia Reports*, 582; 35 *Ibid.*, 177; 37 *Ibid.*, 262. But this assignment would have been good had it been made here: Code, section 1952. In it no trust or benefit is reserved to the debtor or to any person for him. The creditors are the sole beneficiaries, and they are all placed upon an equal footing. No preference or partiality is shown to any. It is impossible to conceive of an assignment more free from objectionable features. It was taken for granted in the argument that it was valid under the laws of South Carolina, and we know of nothing to impair its validity here.

2. The court permitted the attaching creditors to have judgment against the garnishee for their *pro rata* share of the fund. In so doing, we are not sure but that the court trenched upon the strict legal title of the assignees, who, it seems, were before the court claiming the whole fund under the assignment. Treating the assignment as valid, it passed the legal title to the trustees, whether the creditors accepted or not: 10 *Georgia Reports*, 274. The trustees had accepted the trust before the fund was attached, one of them having notified the garnishee of the assignment on the day garnishment was served, but before it was served.

3. It was urged in the argument that the domestic tribunals will hold assets against a foreign assignment, and administer them till domestic creditors are satisfied in full, or so far as the assets within the jurisdiction will extend. Certainly this would be done if the assignment were not conformable to our own law; but there would be an inconsistency in recognizing the assignment as perfectly valid here, and then refusing to yield to it. There may be decisions in other states or countries on that erratic line, but we are sure

sound principle is the other way, and so we believe is the weight of authority: See Burrill on Assignments. We think most courts have ruled, as we do, that a foreign assignment, at variance with the domestic law, will not be suffered to take effect on domestic assets to the prejudice of domestic creditors; but that an assignment, whether foreign or domestic, that presents no conflict with any law, is to have full effect on all assets to which its terms apply. In the present case the most that domestic attaching creditors could claim, was to hold off the foreign trustees as to so much of the funds as amounted to the *pro rata* share of these creditors, which was done. The trustees do not complain of the judgment. The creditors do complain, but ought not.

Judgment affirmed.